LDA

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

GN MORTGAGE, LLC,

Plaintiff,

v.

MORTGAGE IMPRESSIONS, INC.,

Defendant.

C.A. NO. ________

CA 06 462T

**COMPLAINT**

Plaintiff GN Mortgage, LLC ("GN") hereby brings this Complaint for declaratory judgment and breach of contract against Defendant Mortgage Impressions, Inc. ("MI").

## I. INTRODUCTION

Plaintiff GN is a wholesale mortgage lender, and defendant MI is a mortgage broker. GN and MI entered a contract by which MI was permitted to prepare and submit applications for mortgage loans to GN on behalf MI's customers. MI warranted in its agreement with GN that the information on all mortgage loan applications submitted to GN would be true. MI also promised that if any information it submitted on an application for a mortgage closed by GN turned out to be false, then MI would repurchase that loan from GN, and/or would indemnify GN for any loss in connection therewith.

This cases arises from MI's submission to GN of a loan application that omitted three outstanding debts owed by the applicant -- including two mortgage debts *as to*

*which MI had acted as broker for another lender.* GN closed the loan, but would not have done so had it known about the additional outstanding debt. MI has disclaimed any and all obligation to repurchase the loan and/or indemnify GN for its losses. GN seeks, inter alia, a declaration that MI is so obligated.

## II. PARTIES

1. Plaintiff GN is a Wisconsin limited liability company engaged in the business of wholesale mortgage lending. GN has a principal place of business in Brown Deer, Wisconsin.

2. Defendant MI is a Rhode Island corporation engaged in the business of brokering mortgages. MI has a principal place of business in Cranston, Rhode Island.

## III. JURISDICTION

3. This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332(a) because: (i) GN is a Wisconsin entity headquartered in Wisconsin, (ii) MI is a Rhode Island entity headquartered in Rhode Island; and (iii) the amount in controversy in this case exceeds $75,000.00.

4. Additionally, this Court has jurisdiction over GN's claim for declaratory judgment pursuant to 28 U.S.C. § 2201(a).

## IV. FACTS

5. GN and MI entered a Loan Broker Agreement (the "Broker Agreement") dated September 30, 2004. A copy of the Broker Agreement is attached hereto as Exhibit A.

6. The Broker Agreement provides that MI may, in its discretion, prepare and submit any number of loan applications to GN. See Ex. A at Section 1. "In the

taking of each application which is submitted to GN," however, MI is strictly bound by all terms and conditions of the Broker Agreement. See id.

7. At Section 9 of the Broker Agreement, MI agreed that it:

> . . . represents and warrants that all information on Application submitted by [MI] to GN with regard to any Loan, including all written materials, are and **will be true, correct, currently valid and genuine and will contain no material misstatements, misrepresentations or omissions**.

See Ex. A at Section 9 (emphasis supplied).

8. At Section 10 of the Broker Agreement, MI agreed that it:

> . . . hereby **indemnifies GN**, and its officers, directors, agents, successors and assigns, and agrees to hold GN, and its officers, directors, agents, successors and assigns, harmless **from and against any and all claims, counterclaims, defenses, losses, damages, demands, costs or other liabilities, including reasonable attorneys', paralegals' and experts' fees arising out of any breach by [MI] of any of [MI's] covenants, warranties, agreements, duties or obligations arising under this agreement.** ***In addition to and not in limitation of the foregoing indemnification remedy, with respect to any particular Loan, GN may also require Broker to repurchase such Loan.*** The dollar amount required will be a sum equal to the repurchase amount (inclusive of any service released premium, unpaid interest and other fees) as calculated by the investor and/or GN.

See Ex. A at Section 10 (emphasis supplied).

9. The Broker Agreement is governed by the laws of Wisconsin. See Ex. A at Section 15.

10. On or about February 3, 2005, MI submitted to GN a preliminary application by Linda and Donald Gendron (the "Gendrons") for a loan in the amount of $345,000.00 secured by real property in Woonsocket, Rhode Island. On or about March 9, 2005, MI re-submitted to GN a final application by Linda and Donald Gendron (the "Gendrons") for two loans in the total amount of $319,000.00 secured by real property in

Woonsocket, Rhode Island. The preliminary application and the final application are hereinafter referred to as the "Application."

11. The Application, which MI prepared on the Gendrons' behalf, disclosed some debt owed by the Gendrons, but did not disclose: (i) an auto loan for $25,914; (ii) a first mortgage on a second parcel of real property (the "second property") in the amount of $276,000; and (iii) a second mortgage on the second property in the amount of $69,000.00 (collectively, the "Omitted Debt").

12. On information and belief, MI was the broker through which the Gendrons obtained the first and second mortgages on the second property that were not disclosed on the Application (the "Omitted Mortgages").

13. In reliance upon the information in the Application, GN closed two loans to the Gendrons in the total amount of $319,000.00 on or about March 9, 2005 (collectively, "the Loans"). GN closed the Loan based on the information MI had provided to GN in the Application.

14. Had GN known about the Omitted Debt, it would not have approved, nor would it have closed on, the Loans.

15. The Loans were purchased from GN by an investor called Aurora Loan Services ("Aurora"). Aurora thereafter discovered the existence of the Omitted Mortgages, as to both of which it is, also, the current mortgagee.

16. By letter dated November 7, 2005, Aurora notified GN of the Omitted Debt, and asserted its purported rights to require GN to repurchase the Loan from Aurora, and/or to indemnify Aurora.

17. GN, in turn, by letter dated May 31, 2006, informed MI that MI is in

breach of the Broker Agreement, and demanded that MI repurchase the Loans. GN demanded that MI repurchase the Loans a second time, by letter dated June 20, 2006.

18. MI, through its counsel and in its counsel's letters dated June 6, 2006 and July 20, 2006, has steadfastly contended that it has not breached the Broker Agreement, and it is not obligated to repurchase the Loans or indemnify GN.

19. GN estimates that the repurchase price of the Loans is $324,886.05.

## V. CAUSES OF ACTION

### COUNT I (DECLARATORY JUDGMENT)

20. GN repeats and realleges the allegations contained in Paragraphs 1 through 19 above as if fully set forth herein.

21. MI breached the Broker Agreement by failing to include the Omitted Debt in the Application.

22. MI is, thus, obligated under the Broker Agreement to repurchase the Loan and/or to indemnify GN for any and all damages, losses, and/or demands made upon it with respect to the Loans. MI is also obligated under the Broker Agreement to pay GN all of its legal fees and costs in connection with the instant litigation.

23. MI has refused to repurchase the Loans and has repeatedly disclaimed both its obligations to repurchase the Loans and to indemnify GN.

24. GN estimates that the repurchase price of the Loans is $324,886.05.

25. An actual controversy is presented to the Court concerning the respective rights and obligations of Mortgage Impressions and GN under the Broker Agreement.

COUNT II
(BREACH OF CONTRACT)

26. GN repeats and realleges the allegations contained in Paragraphs 1 through 25 above as if fully set forth herein.

27. GN and MI are parties to the Broker Agreement.

28. MI is bound by the terms of the Broker Agreement.

29. MI has breached Section 9 of the Broker Agreement by failing to disclose the Omitted Debt on the Application.

30. MI has further breached Section 10 of the Broker Agreement by refusing to repurchase the Loan and by disclaiming its obligation to repurchase the loan and its obligation to indemnify GN.

31. MI's breaches of the Broker Agreement are without legal excuse.

32. GN has been damaged by MI's breaches of the Broker Agreement in an amount to be determined at trial.

## VI. PRAYERS FOR RELIEF

WHEREFORE, Plaintiff GN Mortgage LLC requests that this Court:

(i) Declare that Defendant Mortgage Impressions, Inc. is obligated to repurchase the Loan from GN, Aurora, and/or any subsequent purchaser of the Loans;

(ii) Declare that Defendant Mortgage Impressions, Inc. is obligated to indemnify GN for all its losses with respect to the Loans and for all demands against it with respect to the Loans, including those made by Aurora;

(iv) Enter Judgment in GN's favor with respect to GN's counts for Breach of Contract and Misrepresentation;

(v) Order MI to pay GN its legal fees and costs pursuant to Section 10 of the Agreement; and

(vi) Take such other or further action as the Court deems just and proper.

GN MORTGAGE, LLC

By its attorneys,

Andrea Peraner-Sweet (#5241)
SALLY & FITCH LLP
One Beacon Street
Boston, MA 02108
(617) 542-5542
(617) 542-1542 (FAX)

Of Counsel:

Stephen C. Reilly
Jennifer E. Greaney
SALLY & FITCH LLP
One Beacon Street
Boston, MA 02108
(617) 542-5542
(617) 542-1542 (FAX)

Dated: October 19, 2006