# GN MORTGAGE, LLC
# LOAN BROKER AGREEMENT

This Loan Broker Agreement ("THIS AGREEMENT") is made and entered into as of the 30th day of September, 2004, by and between GN MORTGAGE, LLC, a Wisconsin Limited Liability Company, ("GN"), located at 4000 W. Brown Deer Road, Brown Deer, Wisconsin, 53209, and Mortgage Impressions, Inc., a Rhode Island Corporation.

SECTION 1. **PREPARATION AND DELIVERY OF APPLICATIONS**. Broker shall, from time to time, in the course of its business, accept from individual applicants their applications for one (1) to four (4) unit residential mortgage loans ("LOANS" and individually, a "LOAN"). Broker shall submit to GN for its review and approval or disapproval, those applications for Loans that Broker, in its sole discretion elects so to submit; and while Broker shall not be obligated to submit any particular application, any minimum number of applications, or any applications at all, Broker nevertheless agrees that (i) in the conduct of its business generally, and (ii) in the taking of each application which is submitted to GN, and the preparation of related documents and materials, in particular, each shall be governed in strict accordance with the terms of this Agreement.

SECTION 2. **SUBMISSION OF APPLICATIONS**. As to each application that Broker submits to GN (an "APPLICATION"), Broker shall submit to GN a completed application package meeting all the standard requirements of GN for its receipt of such packages from Brokers ("REQUIREMENTS"), as GN makes its requirements known to Broker from time to time, reflecting current guidelines and requirements of the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC) or any private investor with whom GN desires to sell loans Broker expressly understands and acknowledges that the sole purpose of its submission of applications to GN is for GN's review of each application for approval or disapproval. Broker shall make an application exclusively available to GN from the date the Broker submits the application to GN until GN either disapproves the application or approves, funds and closes the Loan for which the application is made.

SECTION 3. **APPROVAL OR DISAPPROVAL**. GN shall, within three (3) business days from receipt of a completed application package for an application in accordance with the provisions of Section 2 above, communicate to Broker by telephone or in writing GN's approval or disapproval of the Application. GN shall not be under any obligation to approve any particular application, any minimum number of Applications, or any Applications at all or to fund and close any Loan except in accordance with Section 4 hereof. GN shall approve or disapprove each Application solely for its own benefit and account; and in making such determination GN expressly disclaims any inference Broker may draw as to the general quality or acceptability of the underlying Application or the related application package.

SECTION 4. **FUNDING AND CLOSING LOANS**. If GN approved the Application, GN shall take all commercially reasonable actions within its control necessary to fund





PAGE 15/24 * RCVD AT 9/30/2004 3:39:02 PM [Central Daylight Time] * SVR:CHQ2KFXBS1/13 * DNIS:5897 * CSID: * DURATION (mm-ss):07-30
PAGE 2/5 * RCVD AT 5/31/2006 9:46:06 AM [Central Daylight Time] * SVR:CHQ2KFXBS1/22 * DNIS:3522 * CSID:414 365 6766 * DURATION (mm-ss):01-28

and close the loan for which an Application is made, subject however, to the terms and conditions of GN's approval. In no event, however, shall GN be obligated to fund and close a Loan unless all pre-closing conditions set forth in GN's written approval of an Application are met at least seventy-two (72) hours prior to the requested funding and closing. Broker agrees to assign to GN any and all rights which it may have with respect to any Loan pursuant to an Application that is approved by GN in accordance herewith promptly upon receipt of notice of approval thereof from GN. The brokerage fee ("the FEE") payable by GN to Broker, in consideration of Broker's preparation of the completed application package for the loan, shall be deemed earned by Broker and shall be due and payable by GN to Broker upon the actual closing and funding of Loan by GN. The fee shall be calculated in accordance with the lock/registration form as submitted by the Broker on each individual application.

SECTION 5. <u>COMPLIANCE WITH LAW</u>. Broker warrants that is shall, both (i) in the conduct of its business generally and (ii) in its dealings with applicants and potential applicants and its handling of each Application and the preparation and delivery of related documents and materials, in particular, comply fully, completely and in a timely manner with, and that all documentation prepared by Broker in connection with each Application shall conform to and comply with every requirement of all applicable provisions of the federal and state laws, including, without limitation, the following: (a) THE EQUAL CREDIT OPPORTUNITY ACT AND REGULATION B, both as from time to time amended; (b) THE TRUTH IN LENDING ACT AND REGULATION Z, both as from time to time amended; (c) THE REAL ESTATE PROCEDURES ACT OF 1974, as amended; (d) THE FEDERAL CREDIT REPORTING ACT, as amended; (e) to the extent applicable, all rules, requirements and regulations of the Federal National Mortgage Association (FNMA), the Federal Home Loan Mortgage Corporation (FHLMC), the Federal Housing Authority, The Government National Mortgage Association, the Department of Housing and Urban Development and the Veterans' Administration; and (f) to the extend applicable, each of the following: ( i) any state law regulating mortgage brokerage activities or requiring licensing for such activities, and (ii) the regulation promulgated thereunder by the applicable state regulatory authority (the "State Regulator"), Broker shall not name GN in any disclosure statement or other document or instrument required by law as the lender or creditor, or otherwise.

SECTION 6. <u>NO PARTNERSHIP, AGENCY OR OTHER RELATIONSHIP</u>. Broker acknowledges and agrees it is acting as an independent contractor, and Broker shall not represent itself in any manner to be the agent, servant, employee, representative, partner or co-venturer of GN. Broker shall have no authority to solicit, bind, or commit GN to any contract or transaction, whether for replacement of a Loan or for any other purpose, and Broker shall not represent in any manner to anyone that Broker has any such authority. Broker shall have no power or authority to undertake any act or transaction on behalf of GN.

SECTION 7. <u>ACKNOWLEDGMENT OF BROKER</u>. Broker acknowledges and agrees to provide all documentation, facts, information and other assistance as may reasonably be required or otherwise requested by GN, including any information as may





PAGE 16/24 * RCVD AT 9/30/2004 3:39:02 PM [Central Daylight Time] * SVR:CHO2KFXBS1/13 * DNIS:5907 * CSID: * DURATION (mm-ss):07-30
PAGE 3/5 * RCVD AT 5/31/2006 9:46:06 AM [Central Daylight Time] * SVR:CHO2KFXBS1/22 * DNIS:3522 * CSID:414 365 6766 * DURATION (mm-ss):01-28

be necessary in connection with the origination, application, processing, funding and closing of loans.

SECTION 8. **RESIDENTIAL MORTGAGE LICENSE.** To the extent Broker conducts any business or activity in a state requiring a license, or is otherwise subject to the jurisdiction or supervision of the State Regulator, Broker warrants and represents to GN that Broker holds, in its own name, a residential mortgage license (the "LICENSE") issued by the State Regulator and that Broker is presently in good standing with the State Regulator in connection with the License. Broker covenants to maintain the License on a current basis and to keep itself in good standing with the State Regulator. Broker further covenants to notify GN immediately upon the suspension, revocation, expiration or other termination of the license, or of the taking of any action by the State Regulator against Broker which adversely affects the License or Broker's ability to conduct business.

SECTION 9. **INFORMATION TRUE.** Broker represents and warrants that all information on Application submitted by Broker to GN with regard to any Loan, including all written materials, are and will be true, correct, currently valid and genuine and will contain no material misstatements, misrepresentations or omissions.

SECTION 10. **INDEMNIFICATION/REPURCHASES.** Broker hereby indemnifies GN, and its officers, directors, agents, successors and assigns, and agrees to hold GN, and its officers, directors, agents, successors and assigns, harmless from and against any and all claims, counterclaims, defenses, losses, damages, demands, costs or other liabilities, including reasonable attorneys', paralegals' and experts' fees, arising out of any breach by Broker of any of Broker's covenants, warranties, agreements, duties or obligations arising under this agreement. In addition to and not in limitation of the foregoing indemnification remedy, with respect to any particular Loan, GN may also require Broker to repurchase such Loan. The dollar amount required will be a sum equal to the repurchase amount (inclusive of any service released premium, unpaid interest and other fees) as calculated by the investor and/or GN.

SECTION 11. **PREMIUM RECAPTURE.** For a period of six (6) months following the Closing Date of each Loan, Broker shall rebate to GN any premium paid for any Loan that is paid off in full during the first six (6) months after its respective Closing Date provided the Broker (or its affiliates) was a party to the "new" refinance transaction [exceptions: 1) if the home was sold, or 2) if Broker was not a party to the "new" refinance transaction or 3) if Broker is party to the refinance transaction, Broker will allow GN first right of refusal. GN will make a good faith attempt to mitigate losses/premium recapture on the broker's behalf.] Broker shall pay GN such rebate within ten (10) days after it receives written notice of full payoff from GN.

SECTION 12. **TERMINATION.** This agreement may be terminated by either party at any time upon the delivery of written notice of termination. No grounds for termination are necessary, and it may be made with or without cause. Termination of this Agreement shall not affect the parties obligation with respect to Applications delivered to GN prior to the effective date of termination of this Agreement.

SECTION 13. <u>NON-DISCRIMINATION</u>. Broker shall not refuse to offer loans or vary the terms of loans or the application procedures for loans on the basis of the applicant's race, color, religion, national origin, age, gender, marital status, family status, receipt of public assistance, exercise of consumer rights, physical or mental handicap, veteran status or solely on the basis of the geographic location of the proposed security.

SECTION 14. <u>COMMUNICATION PRACTICES</u>. Broker hereby specifically authorizes GN to send marketing materials, rate sheet information and communications of any kind to Broker via fax, e-mail or any other medium notwithstanding any State or Federal "do not contact" or similar laws respecting unauthorized communications to any and all fax number(s), email or other media "address" provided on or with the application associated with this agreement.

SECTION 15. <u>MISCELLANEOUS</u>. This Agreement shall be governed by the substantive laws of the State of Wisconsin. If any provision hereof shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provision of the Agreement. All notices may be sent to the address set forth in the first paragraph hereof. This Agreement may be executed in counterparts. All rights granted herein or at law or equity for breach of default hereunder shall be cumulative and may be exercised from time to time.

| "GN" | "BROKER" |
| --- | --- |
| GN Mortgage, LLC | Mortgage Impressions, Inc |
| Signature: Carrie Gellings | Signature: [signature] |
| By: Carrie Gellings | By: Susan Frangillo |
| Its: Broker Approval Specialist Asst. | Its: President |
| Dated: 10/21/04 | Dated: 9/30/04 |



H:\GN Broker App Docs\GNBrokerAgreement.doc
Last Updated 06/12/2003

PAGE 18/24 * RCVD AT 9/30/2004 3:39:02 PM [Central Daylight Time] * SVR:CHQ2KFXBS1/13 * DNIS:5897 * CSID: * DURATION (mm-ss):07-28

PAGE 5/5 * RCVD AT 5/31/2006 9:46:06 AM [Central Daylight Time] * SVR:CHQ2KFXBS1/22 * DNIS:3522 * CSID:414 365 6766 * DURATION (mm-ss):01-28